1  **Daniel C. Sharpe, Esq. (SBN 267075)**
2  **WINDSOR TROY**
3  **3701 Wilshire Boulevard, Suite 1111**
   **Los Angeles, California 90010**
4  **Phone: (323) 800-5405**
   **Facsimile: (323) 800-5406**
5
6  Attorneys for Plaintiffs

7
8            **IN THE UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10
| | |
|---|---|
| I.R., a Minor, by and through his Guardian Ad Litem, Erika Garcia; J.L., a Minor, by and through his Guardian Ad Litem, Claudia Santoyo <br><br> PLAINTIFFS <br><br> v. <br><br> CITY OF LOS ANGELES, by and through the LOS ANGELES POLICE DEPARTMENT; OFFICER BONITA WILLIAMS, an Individual; JOYCE FIELDS BREWER SIMPSON, AN Individual; DOES 2-25, inclusive <br><br> DEFENDANTS | No. 2:20-cv-02619-FMO (JCx) <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES** <br><br> 1. Violation of Civil Rights under 42 U.S.C. § 1983 – Fourteenth Amendment Due Process Violation <br> 2. Violation of Civil Rights under 42 U.S.C. § 1983 – Equal Protection <br> 3. Violation of Civil Rights under 42 U.S.C. § 1983 – Supervisory Liability <br> 4. Violation of Civil Rights under 42 U.S.C. § 1983 – *Monell* Liability <br> 5. Battery of a Minor Child <br> 6. Assault <br> 7. Negligent Supervision of Minors <br> 8. Intentional Infliction of Emotional Distress |

Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs bring this lawsuit for civil damages incurred as a result of the willful and reckless misconduct of defendants in violation of their civil rights harm to their persons. Jurisdiction for such claims is conferred upon the Superior Court for the State of California, in and for the County of Los Angeles, as Plaintiffs assert claims herein that are derived from the statutes and common law recognized under the laws of California and the United States, the events give rise to litigation occurred in and around the County of Los Angeles, and the claims asserted herein warrant damages in excess of $25,000.00.

2.      On or about July 2, 2019, Plaintiffs – by and through their counsel of record – served Defendant City of Los Angeles with a Notice of Tort Claim that substantially complied with California Government Code § 910 *et seq*. and was timely pursuant to Cal. Gov. Code § 911.2. On or about August 15, 2019, Defendant City of Los Angeles – by and through the City Attorney's Office – served a formal denial in writing for both Plaintiffs pursuant to Cal. Gov. Code § 913. On or about January 22, 2020, Plaintiffs filed this lawsuit in the Los Angeles Superior Court, thereby timely complying with the deadline to initiate litigation pursuant to Cal. Gov. Code § 945.6.

3.      On or about March 19, 2020, Defendants City of Los Angeles and Bonita Williams removed this matter to the United States District Court for the Central

District of California pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, as Plaintiffs

assert violations of their civil rights under 42 U.S.C. § 1983. Plaintiffs do not dispute

removal and concede that this Honorable Court enjoys original jurisdiction by virtue

of the federal claims asserted.

## **PARTIES**

4.      Plaintiff I.R. ("Plaintiff I.R.") is an individual who at all relevant times was and

is residing in the State of California, County of Los Angeles. Plaintiff I.R. was born in

2009 and is ten years old as of the date of this Complaint. Plaintiff I.R. shall be

referred to by his initials in order to protect his identity as a minor pursuant to the

rules of the California Court system.

5.      Plaintiff J.L. ("Plaintiff J.L.") is an individual who at all relevant times was and

is residing in the State of California, County of Los Angeles. Plaintiff J.L. was born in

2009 and is ten years old as of the date of this Complaint. Plaintiff J.L. shall be

referred to by his initials in order to protect his identity as a minor pursuant to the

rules of the California Court system.

6.      Defendant OFFICER BONITA WILLIAMS ("Defendant WILLIAMS") is an

adult individual who at all relevant times was and is residing in the State of California,

County of Los Angeles. At all times relevant, Defendant WILLIAMS was acting in

her official capacity as an employee and representative of DEFENDANT CITY OF

LOS ANGELES by and through her position as a law enforcement officer with the Los Angeles Police Department.

7.     Defendant JOYCE FIELDS BREWER SIMPSON ("Defendant SIMPSON") is an adult individual who at all relevant times was and is a resident of the State of California, County of Los Angeles. Plaintiffs understand and allege herein that, at all times relevant, Defendant SIMPSON was acting in her capacity as a community volunteer of the Los Angeles Police Department.

8.     Defendant CITY OF LOS ANGELES ("COLA") is a California governmental entity charged with and responsible for appointing, promoting, instructing, disciplining, and supervising employees of the City of Los Angeles, including in particular those employed by and through the Los Angeles Police Department ("LAPD"), including but not limited to Defendant WILLIAMS, as well as any community volunteers formally authorized, permitted, or otherwise allowed to perform tasks or responsibilities on behalf of Defendant COLA generally and the LAPD specifically.

9.     The unknown named defendants ("DOE" Defendants) include, but are not limited to, unknown officers, sergeants, lieutenants, and captains employed by Defendant COLA, by and through either the Los Angeles Police Department ("LAPD") or some other government agency, and either committed the misconduct and/or wrongful actions or otherwise acquiesced in the negligence or other

misconduct described and attributed to the named defendants herein, resulting in injury to Plaintiffs' person, well-being and property as described in more detail below.

10.     Plaintiffs are ignorant of the true names and capacities of those named as DOE Defendants but will amend or otherwise update this Complaint upon receipt of information sufficient to identify any DOE Defendants by their true names.

## **FACTS COMMON TO ALL CLAIMS**

11.     Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count of this Complaint.

12.     Defendant COLA, by and through the LAPD, has organized and maintained variations of a youth outreach program called Jeopardy aka the "Jeopardy Program." According to media representations made by Defendant COLA, including but not limited to the website hosted by Defendants, the purpose and goals of the Jeopardy Program are to provide safe, positive alternatives for children ages 8-17 to participate in to discourage involvement in criminal or gang activity in and around the greater Los Angeles area.

13.     Prior to June of 2019, members of the LAPD distributed flyers and other materials advertising a "Character Building Camp" by and through the LAPD Jeopardy Program, to be held Mondays through Thursdays from June 3, 2019 through

June 29, 2019. The flyers specifically advertised the Camp for children ages 6-12, and listed activities of exercise, conflict resolution, anger management, community clean up, personal care, etiquette, math tutoring, and "special guest." The flyers acknowledged that it was "mandatory" for parents to meet with Defendant WILLIAMS as part of the enrollment and instructed parents to pick registration forms from the Southeast Station of the LAPD, located at 145 West 108th Street in Los Angeles.

14.     Erika Garcia is the biological and legal parent of Plaintiff I.R.

15.     Ms. Garcia completed a registration form on behalf of I.R. to enroll him in the Camp. Prior to enrollment in the Camp, Plaintiff I.R. did not have any behavioral, disciplinary, or gang-related issues, nor did Ms. Garcia have any good faith concerns that I.R. was at risk for such issues. Rather, Ms. Garcia understood that the LAPD's Character Building Camp appeared to be an affordable summer program for her son, I.R.

16.     Claudia Santoyo is the biological and legal parent of Plaintiff J.L.

17.     Ms. Santoyo completed a registration form on behalf of J.L. to enroll him in the Camp. Similarly, Plaintiff J.L. did not have any previous behavioral, disciplinary, or gang-related issues, nor was there any good faith concern that J.L. was at risk of joining a gang. However, Ms. Santoyo – like Ms. Garcia – understood that the Camp was an affordable summer program for her son, J.L.

18.     On information and belief, Defendants – including Defendants COLA, WILLIAMS, and unknown DOE Defendants – purposefully circulated flyers and other advertisements for the Character Building Camp to parents who had other family members enrolled in other LAPD programs, including but not limited to the Cadet program, in order to encourage enrollment in the Character Building Camp. This had the natural and reasonably foreseeable effect of targeting families that had a preexisting relationship with youth programs ran by the LAPD and encouraged parents of those families to enroll their young children in the Character Building Camp.

19.     Ms. Garcia and Ms. Santoyo completed all necessary requirements to register their sons in the Character Building Camp, including paying a fee for registration and/or enrollment and meeting with Defendant WILLIAMS.

20.     During their meeting with Defendant WILLIAMS, Ms. Garcia and Ms. Santoyo were told that the "Character Building Camp" would be comprised of activities to "build character" through education, community cleaning, and positive leadership.

21.     On or about June 3, 2019, Plaintiffs I.R. and J.L. were dropped off at the Southeast Station for several hours pursuant to the instructions given by Defendant WILLIAMS and others.

22.     The "Character Building Camp" was held inside the Southeast Station of the LAPD. Several young enrollees attended and were left in the care of Defendant

WILLIAMS pursuant to the instructions they received. Plaintiffs I.R. and J.L. – like all other attendees of the Camp – were expressly left in the custody and care of Defendant WILLIAMS in her capacity as an LAPD officer and supervisor of the Camp program.

23.     At all relevant times, Plaintiffs understand and assert herein that Defendant WILLIAMS was a trained officer and member of the LAPD. In that capacity, Defendant WILLIAMS held herself out as an individual that had participated in or otherwise completed multiple training programs, classes, and/or educational events that ostensibly qualified Defendant WILLIAMS to act as the contact person and primary supervisor of young children for the "Character Building Camp."

24.     Because Defendant COLA – by and through the LAPD and its Jeopardy program – held itself out as a provider of day camp services for minor children, including advertising, recruiting, and charging parents for the opportunity to have their young children attend the "Character Building Camp" run by trained police officers, Defendant COLA willingly and affirmatively took on a special relationship with the minor children, including in particular Plaintiffs I.R. and J.L.

25.     After the parents left, Defendant WILLIAMS introduced the children to Defendant SIMPSON, who held herself out to the minor children as "Mama J;" Defendants WILLIAMS and/or SIMPSON represented to the minors attending the Camp that the two defendants were sisters.

26.    Throughout the existence of the "Character Building Camp," Defendant SIMPSON directly participated in the supervision of minor children, including but not limited to Plaintiffs I.R. and J.L.

27.    Neither Defendant WILLIAMS nor Defendant SIMPSON made any express representations to the minor children enrolled in the Camp as to Defendant SIMPSON's role with the LAPD or Defendant COLA. Furthermore, Plaintiffs are unaware of any training, employment experience, or other qualifications – if any – that Defendant SIMPSON possessed that qualified her to supervise the minor children or otherwise participate in the Camp. On that basis, Plaintiffs assert and aver herein that Defendants acquiesced, assented to, or otherwise encouraged Defendant SIMPSON to supervise minor children left in the care of the Officer WILLIAMS without any screening, training, or other administrative process to take even minimal steps to ensure that the minor children enrolled in the Camp were being overseen by a reasonably competent and qualified individual.

28.    During the course of the first week of the Camp, Defendant WILLIAMS allowed, encouraged, or otherwise permitted Defendant SIMPSON to supervise and instructing the minor children without Defendant WILLIAMS present – whether because Defendant WILLIAMS chose to leave the area where the minor children were kept or because Defendant WILLIAMS permitted or otherwise did not prevent Defendant SIMPSON from leading minor children to another area of the Southeast

Station where Defendant WILLIAMS could not directly supervise Defendant SIMPSON.

29.     During the first week of the Camp, Defendant SIMPSON became frustrated by the fact that some of the minor children enrolled in the Camp did not speak English fluently, but instead relied on Spanish to communicate verbally.

30.     During the first week of the Camp, Defendant SIMPSON ordered some of the minor children that spoke English to act as interpreters for the other children to communicate her commands to the other minor children, rather than seeking out any of the many qualified individuals affiliated with the LAPD who were fluent in Spanish and could therefore communicate directly with each minor attendee effectively.

31.     During the first week of the Camp, Defendant SIMPSON frequently made comments about the presumed immigration status of the minor children and their family members based on the English fluency that the children did or did not possess, stating in the presence of the minor children that the children and their parents should be removed from the United States because they did not speak English.

32.     During the first week of the Camp, Defendant SIMPSON threatened to use physical exercise as a disciplinary measure against minor children that did not speak English fluently, threatening that they would run extra laps if they did not pronounce words in English to Defendant SIMPSON's liking.

33.    At no point did Plaintiff's parents, guardians, or legal representatives receive notice that corporal punishment would be implemented during the "Character Building Camp," and no permission was given to Defendants to permit corporal punishment to be used against the young children at any point.

34.    During the first week of the Camp, Defendant SIMPSON began implementing corporal punishment as a disciplinary measure against the minor children enrolled in the Camp. However, rather than striking the minor children herself, Defendant SIMPSON would order one minor child to strike another child with a closed fist.

35.    Upon information and belief, Plaintiffs assert herein that Defendant SIMPSON demanded that minor children strike one another out of a misguided belief that doing so was somehow more appropriate or legally permissible than Defendant SIMPSON striking the children herself.

36.    The purposeful instruction of young children to physically hit one another as a method of enforcing discipline constitutes child abuse and is a crime pursuant to California Penal Code § 273a.

37.    Defendant SIMPSON personally instructed Plaintiff I.R. to hit other children on multiple occasions. When Plaintiff I.R. expressed confusion, fear, and uncertainty with doing as she instructed, Defendant SIMPSON communicated to Plaintiff I.R. that he would be on the receiving end of such physical abuse if he did not hit other children as she instructed. This caused Plaintiff I.R. to become very upset and cry.

However, Plaintiff I.R. eventually complied with Defendant SIMPSON's demands that he punch other students as she requested to avoid becoming a recipient of the same physical abuse.

38.     Defendant SIMPSON personally instructed another minor child to punch Plaintiff J.L. on the thigh on at least two separate occasions. The other minor child eventually complied, though Defendant SIMPSON forced the child to repeatedly strike Plaintiff J.L. because – according to Defendant SIMPSON – the other child was not using sufficient force to punch Plaintiff J.L. to Defendant SIMPSON's satisfaction.

39.     At one point after Plaintiff J.L. became visibly upset in response to this physical abuse and began crying, Defendant SIMPSON warned Plaintiff J.L. that the next time she made another student hit him, he would be hit on his face. Plaintiff J.L. understood that this threat was made to warn against showing emotions or reacting negatively to Defendant SIMPSON's purposefully orchestrated physical abuse.

40.     On information and belief, Plaintiffs assert that Defendant SIMPSON's actions were not unique to Plaintiffs but in fact were endemic to the Camp and all of the minor children enrolled in the same.

41.     Defendant SIMPSON's actions as described herein – along with Defendant WILLIAMS' knowledge, approval, encouragement, and/or acquiescence to the same –

constituted willful and malicious abuse of the minor children who's attendance at the Camp was openly and purposefully encouraged by Defendants.

42.     Defendant WILLIAMS and Defendant SIMPSON abused their positions as supervisors of the Camp, relying on the good will of the LAPD and the trust that the minor children and their families had placed in other community programs in order to maintain the trust that the children and their parents provided in order to get away with the willful orchestration of child abuse described herein.

43.     During the second week of the Camp, Plaintiffs independently reported to their parents some of the details of the abusive and racially charged behavior they experienced at the hands of Defendant SIMPSON.

44.     On or about June 13, 2019, Ms. Santoyo made a complaint to members of the LAPD regarding the abusive incidents that Plaintiff J.L. reported to her.

45.     Later in the evening on June 13, 2019, Plaintiff J.L. and other children enrolled in the Camp were interviewed by members of the LAPD, including but not necessarily limited to an individual who identified himself as Sergeant Ramos.

46.     On or about June 20, 2019, Ms. Santoyo and Ms. Garcia were contacted by phone and informed that the Camp program was terminated indefinitely.

47.     On information and belief no employee of Defendant COLA – including but not limited to Defendant WILLIAMS – was punished, disciplined, terminated, or otherwise formally reprimanded for their misconduct as alleged herein.

48.    As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered and will continue to suffer psychological injury, emotional distress, and pain and suffering due to the abusive behavior and forced violence that the minor children were subjected to – all of which was purposefully orchestrated by Defendant SIMPSON and was approved of if not actively encouraged by Defendant WILLIAMS.

49.    As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered economic damages in the form of reasonable costs incurred for psychological counseling to address issues related to the abuse alleged herein.

50.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of minor children, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

//

//

//

//

//

//

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**FOURTEENTH AMENDMENT – DUE PROCESS**

**Against Defendants WILLIAMS, SIMPSON, DOES 2-25**

51.   Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

52.   At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from state-created danger were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiffs of their constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

53.   At all relevant times, Defendant WILLIAMS was employed as a law enforcement officer with the LAPD, and was acting in her official capacity as a police officer when she held herself out as a supervising officer for purposes of the LAPD Jeopardy Program generally and the "Character Building Camp" in particular. This representation included being identified on flyers advertising said Camp, as well as meeting with parents of minor enrollees of the Camp as a prerequisite to enrollment. Such representation was crucial to the existence of the Camp program, as it served to assure the parents that they could reasonably rely on Defendant WILLIAMS and the

LAPD by leaving their young children at the Southeast Station for character-building exercises.

54.     As described elsewhere in this Complaint, Defendants organized, advertised, and promoted the "Character Building Camp," and charged parents a monetary fee for the privilege of enrolling their minor children in said Camp. Defendants specifically encouraged parents to pay a fee and leave their children in the supervision of Defendants for the purpose of "character building" and community-related activities as a safe and trustworthy alternative to other summer programs. Defendants, in their capacity as government actors who purposefully encouraged parents to leave their minor children in their custody and control, created a "special relationship" with respect to their obligation to supervise, protect, and care for the minor children – including but not limited to Plaintiffs – during all relevant times in which the Camp was in operation.

55.     At all relevant times, Defendant WILLIAMS and other unknown members of the LAPD allowed, permitted, approved of, or otherwise encouraged Defendant SIMPSON to act in the capacity of a law enforcement officer or otherwise serve as a representative of the LAPD for purposes of the "Character Building Camp" insofar as Defendant SIMPSON actively participated in the supervision and management of the "Character Building Camp." This included permitting Defendant SIMPSON to order the minor children to engage in specific activities and actions – including but not

limited to the misconduct alleged herein. As such, at all relevant times Defendant SIMPSON was functionally a state actor through her role in the LAPD Jeopardy Program "Character Building Camp" described in this Complaint.

56.     As set forth elsewhere in this Complaint, Defendants WILLIAMS and SIMPSON recklessly disregarded the safety and well-being of Plaintiffs by actively forcing the minor children enrolled in the program – including but not limited to Plaintiffs – to engage in violent acts against one another for the satisfaction, enjoyment, and perceived disciplinary preferences of Defendants, including but not necessarily limited to Defendant SIMPSON in particular. Such conduct was willful, malicious, and intentional. Further, such conduct constitutes child abuse and is criminal under California law, including but not necessarily limited to California Penal Code § 273a.

57.     Such misconduct constitutes a violation of Plaintiffs' rights under the Fourteenth Amendment, which includes the right to be free from state-created danger while under the direct supervision, custody, and control of state actors.

58.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic damages in the form of medical costs incurred for treatment of their psychological and emotional injuries, in amounts subject to proof at trial.

59.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered general damages due to the physical injuries to their person, psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

60.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of minor children, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## FOURTEENTH AMENDMENT – EQUAL PROTECTION

### Against Defendant DOE 1

61.     Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

62.     At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from discrimination based on ethnicity, race, and/or country of origin were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiffs of their constitutional rights, which violated

those rights, and violated the Fourteenth Amendment to the United States Constitution.

63.    At all relevant times, Defendant WILLIAMS and other unknown members of the LAPD allowed, permitted, approved of, or otherwise encouraged Defendant SIMPSON to act in the capacity of a law enforcement officer or otherwise serve as a representative of the LAPD for purposes of the "Character Building Camp" insofar as Defendant SIMPSON actively participated in the supervision and management of the "Character Building Camp." This included permitting Defendant SIMPSON to order the minor children to engage in specific activities and actions – including but not limited to the misconduct alleged herein – outside the presence of any other LAPD staff. As such, at all relevant times Defendant SIMPSON was functionally a state actor through her role in the LAPD Jeopardy Program "Character Building Camp" described in this Complaint.

64.    As set forth elsewhere in this Complaint, Defendant SIMPSON recklessly, wantonly, and willfully disregarded the rights of Plaintiffs by engaging in racist accusations and statements to Plaintiffs and other enrollees in the "Character Building Camp" by accusing Plaintiffs and others of not belonging in the United States, suggesting they and/or their family members should be deported from the United States, and threatened to force them to run additional laps or compelled physical

activities based on her perception of how well the young children spoke and understood English.

65.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic damages in the form of medical costs incurred for treatment of their psychological and emotional injuries, in amounts subject to proof at trial.

66.     As a direct and proximate result of Defendants' actions, Plaintiffs has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

67.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of minor children, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

//

//

//

//

//

//

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 – SUPERVISORY LIABILITY**

**Against Defendants WILLIAMS and DOES 1-25**

68.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

69.     As set forth in more detail in this Complaint, Plaintiffs understand and assert herein that Defendant WILLIAMS and other, unknown Defendants, supervised Defendant SIMPSON – and possibly others – who were responsible for overseeing the LAPD Jeopardy Program generally and the "Character Building Camp" specifically. These Defendants were personally involved in the oversight, supervision, discipline, and guidance of Defendant WILLIAMS and SIMPSON, such that they were personally involved in the day-to-day oversight of the "Character Building Camp" and knew or otherwise should have known that the actions of the other Defendants would result in constitutional injury. As such, these Defendants necessarily incur supervisory liability. See Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir. 2003).

70.     On information and belief, Defendant WILLIAMS and other unknown Defendants personally authorized, approved of, or otherwise encouraged the actions of Defendant SIMPSON in violation of the Fourteenth Amendment to the United States Constitution, including denying Plaintiffs their rights to be free from state-created danger and their right to be free from discriminatory treatment.

71.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered economic damages in the form of medical costs incurred for treatment of their psychological and emotional injuries, in amounts subject to proof at trial.

72.    As a direct and proximate result of Defendants' actions, Plaintiffs has suffered general damages due to the physical injuries to their person, psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

73.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of minor children, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

### FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – Monell Claim

### Against Defendant CITY OF LOS ANGELES

74.    Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

75.    Defendant CITY OF LOS ANGELES, by and through the individual policymakers and/or supervisory officials improperly, inadequately, or with deliberate indifference to the constitutional rights of persons, grossly negligently, or with reckless disregard for constitutional rights, failed to properly train, supervise, retrain,

monitor, or take corrective action with respect to individual employees under their supervision and control, including in particular but not necessarily limited to Defendants WILLIAMS and SIMPSON, and others with respect to the types of wrongful conduct alleged in this complaint, including, but not limited to the failure to enforce the law of the State of California, the unconstitutional enforcement of local ordinances and statutes, the enforcement of unconstitutional ordinances and statutes, and misuse of actual or perceived authority against individuals such as Plaintiff such that each one of them is liable legally for all injuries and/or damages sustained by Plaintiff pursuant to the legal principles set forth in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978), Heller v. Bushey, 759 F.2d 1371 (9th Cir. 1986), cert. granted and reversed on other grounds sub nom. City of Los Angeles v. Heller, 106 S.Ct. 1573 (1986), and Larez v. Gates, 946 F.2d 630 (9th Cir. 1991), the content of all of which is incorporated herein by this reference.

76.     The following policies, customs, and practices of Defendants were in effect at the time of Plaintiff's arrest, which had the natural and foreseeable result of violating Plaintiff's established constitutional rights:

    a.  Allowing untrained, unsupervised, unqualified individuals to run or otherwise oversee minor children in the Jeopardy Program, including the "Character Building Camp;"

b.      Allowing, encouraging, or otherwise refusing to punish officers or other administrative staff who engage in racially charged, racist, or divisive language regarding citizens who do not speak English fluently; and

c.   Allowing, encouraging, or otherwise refusing to punish officers or other administrative staff who engage in the orchestrated abuse of minor children as described herein, including in particular compelling young children to punch one another as a means of discipline and directly threatening harm to children that refuse or otherwise hesitate to engage in violence against one another.

77.   Defendant CITY OF LOS ANGELES owed a duty to Plaintiffs and others at all times to establish, implement, and follow policies, procedures, customs, and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the 14th Amendment; to use reasonable care to select, supervise, train, control, and review the actions of all of their agents, officers, and employees.

78.   Instead, Defendants engaged in the above-described policies, practices, and customs, all of which is not unique to Plaintiffs alone or constitutes an isolated incident, but is in fact a pervasive policy, practice, and custom of which Defendant CITY OF LOS ANGELES, by and through its various supervisors and policymakers, are aware.

79.     The injuries suffered by Plaintiffs as described elsewhere herein, were directly, proximately, and foreseeably caused in part by the unconstitutional practices, policies, or customs, both written and unwritten, that at all relevant times were in full force and effect by Defendants and their employees, which were put in place or otherwise allowed to remain in place due to the tacit agreement of Defendants, various supervisors, managers, and policymakers, and was further exacerbated by their refusal to properly investigate such misconduct of other individuals under their supervision and authority, or discipline the same.

80.     Defendant CITY OF LOS ANGELES, by and through its various supervisors and policymakers, knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would cause Plaintiffs and others to be injured and damaged by the wrongful acts and omissions as alleged herein, that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to individuals within their jurisdiction.

81.     The aforementioned policies, practices, customs, and procedures, as well as the lack of adequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiffs herein and the resulting damages that result from the same.

//

# FIFTH CAUSE OF ACTION

## BATTERY OF A MINOR CHILD

### As to Plaintiff J.L. Against All Defendants

82.     Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

83.     As described elsewhere in this Complaint, Defendants organized, supervised, or otherwise operated the "Character Building Camp" for approximately two weeks in June.

84.     As described elsewhere in this Complaint, Defendants purposefully and intentionally caused certain children to hit other children as a form of discipline, punishment, or otherwise to maintain a culture and attitude of fear among the children as means of social and/or behavioral compliance.

85.     Defendants' actions therefore caused a harmful and offensive touching of Minor Plaintiff J.L. on multiple occasions, which harmed him.

86.     Neither Plaintiff J.L. nor any legal or custodial parent consented to this wrongful and inappropriate touching.

87.     As a result of such wrongful and inappropriate touching, Plaintiff J.L. suffered pain, emotional distress, and psychological injury for which he now requires mental health treatment, which is ongoing.

88.     Any reasonable person – including in particular a child of similar tender age as Plaintiff – would have been offended, injured, and harmed by such wrongful and inappropriate touching.

89.     Defendants' misconduct as described herein constitutes battery upon Plaintiff J.L.'s person.

90.     At all relevant times, Defendants acted under the direct supervision, oversight, and management of other Defendants, including but not limited to Defendant CITY OF LOS ANGELES and its employees, agents, and assigns. At all relevant times, employees of Defendant CITY OF LOS ANGELES – including Doe Defendants identified herein – acted as supervisors to Defendants WILLIAMS and SIMPSON and was therefore responsible for the oversight, supervision, and discipline of Defendant SIMPSON at all times for which they were their supervisors.

91.     At all relevant times, said supervisory defendants expressly and/or tacitly approved of or otherwise encouraged the physical abuse of Plaintiff J.L. and other unknown children entrusted to their care as a method of discipline during Camp hours.

92.     The actions of these supervisory defendants therefore materially, directly, and substantially contributed to the harm suffered by Plaintiff J.L.

93.     Defendant CITY OF LOS ANGELES therefore shares liability for the battery of Plaintiff J.L. as orchestrated by Defendants WILLIAMS and SIMPSON, as the encouragement, approval, and endorsement of said misconduct, which fell within the

scope of Defendant WILLIAMS employment with Defendant CITY OF LOS ANGELES and Defendant SIMPSON's authority as a community volunteer for the LAPD to participate in the "Character Building Camp" and her direct supervision and control of the minor children – including but not limited to Plaintiffs – that attended the same.

94.     Defendants performed the aforementioned wrongful acts in the course and scope of their employment. Pursuant to the common law doctrine of *Respondeat Superior* and related case law, Defendant CITY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

95.     As a direct and proximate result of Defendants misconduct, Plaintiff J.L. has suffered pain, physical injury, emotional distress, and psychological harm – all in amounts to be proven at the time of trial.

96.     As a direct and proximate result of Defendants misconduct, Plaintiff J.L. has incurred special damages in the form of costs for mental health treatment that is ongoing – all in amounts to be proven at the time of trial.

97.     In so engaging in the aforementioned misconduct, Defendants have acted willfully and in conscious disregard for the basic care and treatment of minor children, including but not necessarily limited to Plaintiff J.L., such that their actions shock the conscience of the average person and constitute an abuse of power that was malicious

and purposeful such that punitive damages are allowed under the law.  Punitive damages are therefore sought against the defendants according to proof.

## SIXTH CAUSE OF ACTION

## ASSAULT

### Against All Defendants

98.     Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

99.     As described elsewhere in this Complaint, Defendants organized, supervised, or otherwise operated the "Character Building Camp" for approximately two weeks in June.

100.    As described elsewhere in this Complaint, Defendants purposefully and intentionally caused certain children to hit other children as a form of discipline, punishment, or otherwise to maintain a culture and attitude of fear among the children as means of social and/or behavioral compliance. Moreover, Defendants, including Defendant SIMPSON in particular, repeatedly emphasized to the minor children that misbehavior would result in further physical strikes by other children for the duration of the Camp. Such misbehavior apparently included – but was not necessarily limited to – not speaking English well enough for Defendants liking and crying or otherwise reacting emotionally to being hit at the direction of Defendants.

101.     Defendants, by and through their actions as described above, threatened Plaintiffs and others with imminent harmful and offensive contact. In doing so, Plaintiffs reasonably believed that they were subject to such imminent and harmful contact at any time while at the "Character Building Camp" maintained and supervised by Defendants. Because such harmful and offensive contact was a frequent occurrence at said Camp, it was reasonable for Plaintiffs to believe that Defendants were always on the verge of causing additional harmful and offensive contact by way of forcing minor children to hit one another.

102.     Neither Plaintiffs nor any legal or custodial parent consented to this wrongful and inappropriate conduct.

103.     Any reasonable person – including in particular a child of similar tender age as Plaintiffs – would have been offended, injured, and harmed by such wrongful and inappropriate conduct.

104.     Defendants' misconduct as described herein constitutes assault against Plaintiffs.

105.     At all relevant times, Defendants acted under the direct supervision, oversight, and management of other Defendants, including but not limited to Defendant CITY OF LOS ANGELES and its employees, agents, and assigns. At all relevant times, employees of Defendant CITY OF LOS ANGELES – including Doe Defendants identified herein – acted as supervisors to Defendants WILLIAMS and SIMPSON and

was therefore responsible for the oversight, supervision, and discipline of Defendant SIMPSON at all times for which they were their supervisors.

106.    At all relevant times, said supervisory defendants expressly and/or tacitly approved of or otherwise encouraged Defendant SIMPSON's physical abuse of Plaintiffs and other unknown children entrusted to their care as a method of discipline during Camp hours.

107.    The actions as of these supervisory defendants therefore materially, directly, and substantially contributed to the harm suffered by Plaintiffs

108.    Defendant CITY OF LOS ANGELES therefore shares liability for the assault of Plaintiffs as orchestrated by Defendants WILLIAMS and SIMPSON, as the encouragement, approval, and endorsement of said misconduct, which fell within the scope of Defendants' employment with Defendant CITY OF LOS ANGELES.

109.   Defendants performed the aforementioned wrongful acts in the course and scope of their employment. Pursuant to the common law doctrine of *Respondeat Superior* and related case law, Defendant CITY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

110.    As a direct and proximate result of Defendants misconduct, Plaintiffs have suffered pain, physical injury, emotional distress, and psychological harm – all in amounts to be proven at the time of trial.

111.     As a direct and proximate result of Defendants misconduct, Plaintiffs have incurred special damages in the form of costs for mental health treatment that is ongoing – all in amounts to be proven at the time of trial.

112.     In so engaging in the aforementioned misconduct, Defendants have acted willfully and in conscious disregard for the basic care and treatment of minor children, including but not necessarily limited to Plaintiffs, such that their actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law.  Punitive damages are therefore sought against the defendants according to proof.

**SEVENTH CAUSE OF ACTION**

**NEGLIGENT SUPERVISION OF MINOR CHILDREN/FAILURE TO PROTECT**

**Against All Defendants**

113.     Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

114.   At all relevant times, Defendant WILLIAMS was employed as a law enforcement officer with the LAPD, and was acting in her official capacity as a police officer when she held herself out as a supervising officer for purposes of the LAPD Jeopardy Program generally and the "Character Building Camp" in particular. This representation included being identified on flyers advertising said Camp, as well as meeting with parents of minor enrollees of the Camp as a prerequisite to enrollment.

Such representation was crucial to the existence of the Camp program, as it served to assure the parents that they could reasonably rely on Defendant WILLIAMS and the LAPD by leaving their young children at the Southeast Station for character-building exercises.

115.    As described elsewhere in this Complaint, Defendants organized, advertised, and promoted the "Character Building Camp," and charged parents a monetary fee for the privilege of enrolling their minor children in said Camp. Defendants specifically encouraged parents to pay a fee and leave their children in the supervision of Defendants for the purpose of "character building" and community-related activities as a safe and trustworthy alternative to other summer programs. Defendants, in their capacity as government actors who purposefully encouraged parents to leave their minor children in their custody and control, created a "special relationship" and a non-delegable duty of care with respect to their obligation to supervise, protect, and care for the minor children – including but not limited to Plaintiffs – during all relevant times in which the Camp was in operation.

116.    By advertising for, maintaining, and charging for enrollment in the "Character Building Camp" – and for which Defendants actively encouraged members of the Los Angeles community to enroll their minor children in the same – Defendant COLA and its employees took on an affirmative, non-delegable duty of care to the minor enrollees. This non-delegable duty includes the legal duty to supervise the minor

children as well as any individuals participating in the Camp as well as take other reasonable measures to protect the minor children attending the Camp from reasonably foreseeable harm.

117.    California Government Code § 820 holds that a public employee is liable for injury caused by their acts or omissions, which includes the breach of a recognized duty of care.

118.    California Government Code § 815.2 expressly provides that a public entity is liable for injuries proximately caused by the acts or omissions of an employee within the scope of their employment where such acts or omissions would give rise to liability against the individual employee.

119.    Defendants WILLIAMS, SIMPSON, and others all had a fundamental duty of care to perform active, reasonable supervision of minors enrolled in the "Character Building Camp" while the Camp was in session during its established operating hours and while the minor children were present as enrollees to the Camp. This duty of reasonable supervision included ensuring that the minor enrollees were not subject to racial discrimination, harassment, or compelled physical abuse of one another for the entertainment, satisfaction, or cruel enjoyment of adults.

120.    At all relevant times, Defendants WILLIAMS, SIMPSON, and others refused or otherwise failed to conduct such basic supervision but instead permitted Defendant SIMPSON to engage in the misconduct described herein – including but not

necessarily limited to: mocking minor enrollees for difficulties in speaking English, telling minor enrollees that they and their families should be deported due to their difficulty in speaking English fluently, and orchestrating physical attacks on minor enrollees.

121.    Given the brazen and widespread misconduct by Defendant SIMPSON during the "Character Building Camp" as described herein, Defendants breached their duty to exercise even basic, reasonable supervision of the minor enrollees of said Camp, such that Defendants demonstrated a lack of ordinary care with respect to the Camp or Plaintiffs.

122.    Pursuant to Defendant COLA's non-delegable duty of care to minor enrollees of the "Character Building Camp," Defendant COLA had a basic obligation to screen, evaluate, supervise, and discipline community volunteers that participated in said Camp to ensure that they conducted themselves in an appropriate and safe manner around the minor enrollees.

123.    Defendants COLA, by and through its employees, agents, and representatives – including but not limited to Defendant WILLIAMS – refused or otherwise failed to conduct basic screening, evaluation, supervision, or discipline of Defendant SIMPSON in her capacity as a community volunteer, such that Defendant SIMPSON was permitted, encouraged, or otherwise allowed to engage in the misconduct

described herein to the detriment of the Camp's minor enrollees – including in particular Plaintiffs themselves.

124.    Defendants – including Defendants WILLIAMS and SIMPSON in particular – demonstrated a fundamental and reckless disregard for the safety and wellbeing of the minor enrollees of the "Character Building Camp," including Plaintiffs in particular.

125.    As a direct and proximate result of Defendants' failure to adequately supervise minor enrollees of the Camp, as well as their failure to adequately screen, evaluate, supervise, or discipline Defendant SIMPSON – all of which constitutes a breach of Defendant COLA's duty of care to Plaintiffs – Plaintiffs have suffered injury including physical injury as well as severe emotional trauma.

126.    As a direct and proximate result of Defendants' breach of their duties of care to Plaintiffs, Plaintiffs have incurred economic damages in the form of costs for medical treatment, including but not limited to psychological counseling.

127.    Pursuant to California law, Defendant COLA is vicariously liable for injuries proximately caused by the negligence of its employees, including the individual Defendants as set forth herein. (See Cal. Gov. Code § 815.2(a).)

//

//

//

# EIGHTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Against All Defendants

128.     Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

129.   The wrongful actions of the individual defendants – which include purposefully terrorizing the Plaintiffs with active threats of and compelled physical violence between the young children as a method of behavioral control and discipline, as well as berating and humiliating Plaintiffs and others by accusing them of having insufficient English language skills and repeatedly suggesting that the children and their families deserve to be deported or otherwise prevented from continuing to live in the United States, none of which accomplished any legitimate educational, disciplinary, or "character building" purpose – constituted extreme and outrageous conduct that would offend, outrage, and upset any reasonable person.

130.   Defendant SIMPSON performed the aforementioned wrongful acts with the intention of causing, or otherwise with reckless disregard of the probability of causing, severe emotional distress to Plaintiffs and others.

131.   Defendants therefore directly and proximately caused Plaintiffs to suffer severe or extreme emotional distress, resulting in the need for mental health treatment which is ongoing.

132.     Any reasonable person – particularly a child of such tender age as Plaintiffs – who was similarly situated would have suffered severe or extreme emotional distress if subjected to Defendants' misconduct as described herein.

133.     As a direct and proximate result of Defendants misconduct, Plaintiffs have suffered pain, physical injury, emotional distress, and psychological harm – all in amounts to be proven at the time of trial.

134.     As a direct and proximate result of Defendants misconduct, Plaintiffs have incurred special damages in the form of costs for mental health treatment that is ongoing – all in amounts to be proven at the time of trial.

135.     At all relevant times, Defendants acted under the direct supervision, oversight, and management of other Defendants, including but not limited to Defendant COLA and its employees, agents, and assigns. At all relevant times, employees of Defendant COLA – including Defendant WILLIAMS and the Doe Defendants identified herein – acted as supervisors to Defendants SIMPSON and were therefore responsible for the oversight, supervision, and discipline of Defendant SIMPSON at all times for which they were their supervisors.

136.     At all relevant times, said supervisory defendants expressly and/or tacitly approved of or otherwise actively encouraged Defendant SIMPSON's misconduct with respect to Plaintiffs and other unknown children entrusted to their care during Camp hours.

137.    The actions as of these supervisory defendants therefore materially, directly, and substantially contributed to the harm suffered by Plaintiffs.

138.    Defendant CITY OF LOS ANGELES therefore shares liability for the assault of Plaintiffs as orchestrated by Defendant SIMPSON and others, as the encouragement, approval, and endorsement of said misconduct, which fell within the scope of Defendants' employment with Defendant CITY OF LOS ANGELES.

139.    Defendants performed the aforementioned wrongful acts in the course and scope of their employment. Pursuant to the common law doctrine of *Respondeat Superior* and related case law, Defendant COLA is vicariously liable for the misconduct of Defendants as described herein.

140.    In doing the things alleged herein, Defendants acted willfully and in conscious disregard for Plaintiffs' rights and wellbeing as minor children of tender age, such that their actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law.  Punitive damages are therefore sought against the defendants according to proof.

//

//

//

//

WHEREFORE, Plaintiffs respectfully pray and seek the following relief as to the Causes of Action stated above:

1.  For economic damages according to proof at trial, including in particular costs associated with medical and/or psychological treatment;

2.  For general damages according to proof at trial, including pain, suffering, and loss of enjoyment of life;

3.  For punitive damages according to proof at trial, to the extent authorized or otherwise allowed by law;

3.  For interest on all damages to the extent allowed by law; and

4.  For such other relief as the Court deems proper and just.


Date: May 21, 2020                    BY:    __/S/  Daniel C. Sharpe_____
                                             Daniel C. Sharpe, Esq.



### **REQUEST FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury on all causes of action asserted herein.


Date: May 21, 2020                    BY:    __/S/  Daniel C. Sharpe_____
                                             Daniel C. Sharpe, Esq.